THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| GEORGE L. CROCKER,<br><br>  Plaintiff,<br><br>v.<br><br>DIXIE APPLIED TECHNOLOGY COLLEGE,<br><br>  Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:19-cv-00107-DN<br><br>District Judge David Nuffer |

  Plaintiff George L. Crocker ("Mr. Crocker") filed a complaint[1] alleging his former employer Defendant Dixie Applied Technology College ("Dixie Tech") discriminated against him because of his age or disability and retaliated against him for filing a discrimination charge when it terminated his employment. Dixie Tech moves for summary judgment on all of Mr. Crocker's claims ("Motion").[2] Mr. Crocker opposes[3] Dixie Tech's Motion ("Opposition").

  After careful consideration of the evidence, the parties' memoranda and submissions, Dixie Tech's Motion was GRANTED in part.[4] Dixie Tech was directed to draft a proposed order and send the proposed order to Mr. Crocker's counsel for comments and any objections. Dixie Tech and Mr. Crocker stipulated to the proposed order[5] emailed to chambers on April 19, 2021 ("Proposed Order").[6] Based on final review of all evidence, submissions, and materials, and

---

[1] Complaint, docket no. 3, filed Dec. 30, 2019.

[2] Motion for Summary Judgment and Supporting Memorandum, docket no. 17, filed Sept. 24, 2020 ("Motion").

[3] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, docket no. 20, filed Oct. 29, 2020 ("Opposition").

[4] Docket no. 22, entered Mar. 29, 2021.

[5] Proposed Memorandum Decision and Order Granting Defendant's Motion for Summary Judgment ("Proposed Order"), docket no. 24, filed Apr. 22, 2021.

[6] Docket no. 24-1, filed Apr. 22, 2021.

careful revision of the Proposed Order presented by the parties, this Memorandum Decision and Order Granting in Part Defendant's Motion for Summary Judgment is entered.

TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 3
UNDISPUTED MATERIAL FACTS ........................................................................................... 4
STANDARD OF REVIEW ............................................................................................................ 7
DISCUSSION ................................................................................................................................. 8
   Dixie Tech Did Not Discriminate against Mr. Crocker ............................................................. 8
     A.   Dixie Tech did not pay Mr. Crocker a different wage than similarly situated employees............ 9
     B.   Dixie Tech did not discriminate against Mr. Crocker by reducing his hours. ............................ 12
     C.   Dixie Tech did not discriminate against Mr. Crocker when it terminated him.......................... 12
     D.   Dixie Tech's legitimate, non-discriminatory business reasons for terminating Mr. Crocker were not pretextual. ......................................................................................................................... 13
   Dixie Tech did not Retaliate against Mr. Crocker ................................................................... 14
     A.   Mr. Crocker fails to establish a causal connection between his termination and the filing of his discrimination claim with UALD. ............................................................................................ 15
CONCLUSION ............................................................................................................................ 16
ORDER ........................................................................................................................................ 16

## BACKGROUND

Mr. Crocker began working part-time at Dixie Tech in June 2015.[7] In October 2017, Mr. Crocker filed a discrimination claim against Dixie Tech with the Utah Antidiscrimination and Labor Division ("UALD") alleging age and disability discrimination.[8] On November 14, 2017, Mr. Crocker was terminated from his position.[9] That same day, Mr. Crocker amended his UALD claim to include a retaliation claim.[10] When Mr. Crocker's UALD case was unsuccessful, Mr. Crocker filed this action, alleging three causes of action against Dixie Tech: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) disability discrimination under the Americans with Disabilities Act ("ADA") and the Vocational Rehabilitation Act ("Rehabilitation Act");[11] and (3) retaliation.[12] Dixie Tech moved for summary judgment on all Mr. Crocker's claims, arguing: (1) it has Eleventh Amendment immunity against Mr. Crocker's ADEA and ADA causes of action; (2) that it did not discriminate against Mr. Crocker; and (3) that it did not retaliate against Mr. Crocker.[13] Because Mr. Crocker failed to raise any genuine issues of material fact for his discrimination claims or retaliation claim and

---

[7] Motion, Exhibit 4, Personnel Action Form ("PAF"), docket no. 17, filed Sept. 24, 2020; Motion, Exhibit 6, Timeline ("Timeline"), docket no. 17, filed Sept. 24, 2020.

[8] Opposition, Exhibit 3, UALD Intake Questionnaire, docket no. 20-3, filed Oct. 29, 2020; Timeline.

[9] Timeline; Motion at 1.

[10] Opposition, Exhibit 4, UALD Amended Charge of Discrimination, docket no. 20-4, filed Oct. 29, 2020; Timeline.

[11] Mr. Crocker acknowledges in his Opposition that he failed to provide sufficient allegations for a claim under the Rehabilitation Act and requested leave to file an amended complaint if the issue is dispositive. Opposition at 20, n.3. Because Mr. Crocker's evidence fails to create any genuine issues of material fact for any of his claims, we decline to grant Mr. Crocker leave to amend his complaint.

[12] Complaint, docket no. 3, filed Dec. 30, 2019.

[13] Motion at ii.

Dixie Tech's Motion was granted on that basis, we do not address Dixie Tech's argument asserting Eleventh Amendment immunity.[14]

## UNDISPUTED MATERIAL FACTS[15]

1. Dixie Tech has full-time instructors and part-time classroom instructors whose primary responsibility is to teach classes to students.[16]

2. Dixie Tech's part-time classroom instructors are commonly paid $27.50/hour, although different rates may apply depending upon the program and the classroom instructor's credentials.[17]

3. Dixie Tech also has part-time employees who are lab assistants who help students with hands-on activities in the labs after they have learned the theory from the instructor in the classroom.[18]

4. Lab assistants are generally paid $15.00/hour.[19]

5. Classroom instructors also help in the lab at times, but lab assistants occasionally teach in the classroom. If they teach in the classroom, they are paid at the instructor rate.[20]

6. Scott Willis ("Willis") was Mr. Crocker's supervisor starting in June 2017.[21]

---

[14] Mr. Crocker agrees that Dixie Tech has Eleventh Amendment immunity regarding requests for monetary relief for his ADEA and ADA claims, but asserts that injunctive relief for those claims is still available. We do not reach this argument because Dixie Tech is entitled to judgment as a matter of law on all Crocker's claims.

[15] These Undisputed Material Facts are drawn from the parties' memoranda on the Motion, accompanying exhibits, and from the stipulated Proposed Order provided by the parties, see docket no. 24, filed Apr. 22, 2021.

[16] Motion, Statement of Undisputed Material Facts ("Facts") ¶ 2 at 3, citing Exhibit 1, Declaration of Sam Draper, ¶ 5 at 2, docket no. 17, filed Sept. 24, 2020 ("Draper Decl."); Opposition, Plaintiff's Response to the Defendant's Statement of Undisputed Facts ("Response to Facts"), ¶ 2 at 5.

[17] Motion, Facts, ¶ 3 at 3, citing Draper Decl., ¶ 6 at 2; Opposition, Response to Facts, ¶ 3 at 6.

[18] Motion, Facts, ¶ 4 at 3, citing Draper Decl., ¶ 7 at 2; Opposition, Response to Facts, ¶ 4 at 6.

[19] Motion, Facts, ¶ 6 at 3, citing Draper Decl., ¶ 9 at 2; Opposition, Response to Facts, ¶ 6 at 6.

[20] Motion, Facts, ¶ 7 at 3, citing Draper Decl., ¶ 10 at 2; Opposition, Response to Facts, ¶ 7 at 7–8.

[21] Motion, Facts, ¶ 8 at 3, citing Exhibit 2, Declaration of Scott Willis, ¶ 3 at 2, docket no. 17, filed Sept. 24, 2020 ("Willis Decl."); Opposition, Response to Facts, ¶ 8 at 8.

7. Dixie Tech hired Alfonso Gonzales ("Gonzales") as a full-time classroom instructor in November 2017.[22]

8. Brigg Lewis ("Lewis") served as a lab assistant for the CNC program from April 2017 to approximately October 2018. His title was Lab Assistant. Dixie Tech paid him $15.00/hour when he worked as a lab assistant. He occasionally taught in the classroom and made $27.50/hour when he did so.[23]

9. During the time Mr. Crocker worked for Dixie Tech, there was a lab assistant working in the diesel program who was paid $15.00/hour.[24]

10. Dixie Tech hired Mr. Crocker on June 1, 2015 as a part-time lab assistant to work in the OpX lab to set up and work with Dixie Tech's OpX instructor Steve Carwell ("Carwell").[25]

11. Carwell taught students in the classroom and when he was done, Mr. Crocker would help students in the lab.[26]

12. Mr. Crocker had surgery in April 2017 and Willis cut two hours from Mr. Crocker's schedule one day after he returned from surgery "so [Mr. Crocker] could have more time to heal."[27] Even though Mr. Crocker's hours remained at ten per week, he worked more hours when there was a project.[28]

---

[22] Motion, Facts, ¶ 9 at 4, citing Draper Decl., ¶ 11 at 2; Opposition, Response to Facts, ¶ 9 at 8.

[23] Motion, Facts, ¶ 10 at 4, citing Draper Decl., ¶ 12 at 2–3; Opposition, Response to Facts, ¶ 10 at 8–9.

[24] Motion, Facts, ¶ 11 at 4, citing Draper Decl., ¶ 13 at 3; Opposition, Response to Facts, ¶ 11 at 9.

[25] Motion, Facts, ¶ 14 at 4; Opposition, Response to Facts, ¶ 14 at 9–10.

[26] Motion, Facts, ¶ 15 at 4, citing Exhibit 3, Deposition of George L. Crocker, March 15, 2019 ("Crocker Dep."), at 22:11–22:17; Opposition, Response to Facts, ¶ 15 at 10.

[27] Motion, Facts, ¶ 16 at 5, citing Crocker Dep. at 39:12–39:23; Opposition, Response to Facts, ¶ 16 at 10–11.

[28] Motion, Facts, ¶ 16 at 5, citing Crocker Dep. at 40:8–40:11; Opposition, Response to Facts, ¶ 16 at 10–11.

13. Mr. Crocker never taught in the classroom, but he set up lab equipment and helped students with their laboratory projects for Carwell's programs.[29]

14. Mr. Crocker only worked in the lab, whereas Lewis worked in both the classroom and the lab.[30]

15. Willis watched employees as they worked to understand what they were doing and evaluate their performance and suggest improvements.[31]

16. Mr. Crocker noticed that Willis watched Lewis and Mike Shrout ("Shrout"), another CNC classroom instructor,[32] several times in the new building.[33]

17. Shrout informed Willis that Lewis was teaching in the classroom, and that he believed Lewis should be paid instructor wages when he was teaching in the classroom. Willis verified that Lewis was indeed teaching, and then Dixie Tech set up a system where he could be paid at the instructor rate when he was teaching, or at the lab assistant rate when he was not teaching.[34]

18. Willis was never told that Mr. Crocker taught in any classes, nor did Willis ever see him teaching in a classroom environment, therefore, no such system was set up for him.[35]

19. In August 2017, Jordan Rushton and Willis discussed hiring a full-time production machinist to help with CNC, which would remove some of the load from Shrout, help improve his skills and fill some of the gaps that Shrout had. They discussed finding someone

---

[29] Motion, Facts, ¶ 17 at 5, citing Willis Decl., ¶ 4 at 2; Opposition, Response to Facts, ¶ 17 at 11–14.
[30] Motion, Facts, ¶ 18 at 5, citing Crocker Dep. at 30:16–30:18; Opposition, Response to Facts, ¶ 18 at 14.
[31] Motion, Facts, ¶ 19 at 5, citing Willis Decl., ¶ 10 at 2–3; Opposition, Response to Facts, ¶ 18 at 14–15.
[32] Willis Decl., ¶ 5 at 2.
[33] Motion, Facts, ¶ 20 at 5, citing Crocker Dep. at 45:10–45:13; Opposition, Response to Facts, ¶ 20 at 15.
[34] Motion, Facts, ¶ 21 at 5, citing Willis Decl., ¶ 5 at 2; Opposition, Response to Facts, ¶ 21 at 15.
[35] Motion, Facts, ¶ 22 at 5, citing Willis Decl., ¶ 6 at 2; Opposition, Response to Facts, ¶ 22 at 15.

who had the CNC, manufacturing, and automation experience required to help with the manufacturing and maintenance programs. They felt that if they could find and hire a person with those skills, they could eliminate the manufacturing and maintenance lab assistant position. Hiring the second CNC instructor was a financial stretch and eliminating the lab assistant position made it possible.[36]

20. In mid-September 2017, Shrout informed Mr. Crocker that he "was up for termination because [Dixie Tech was] bringing another CNC guy in and there were no more hours for [Mr. Crocker]." Shrout also told Mr. Crocker that "it was probably going to be after [Dixie Tech] had moved to the new building but he wasn't sure."[37]

21. Mr. Crocker filed his Charge of Discrimination on October 24, 2017.[38]

22. Dixie Tech conducted interviews and eventually hired Gonzales.[39] After hiring Gonzalez, Dixie Tech believed the lab assistant position was no longer necessary.[40]

23. Once Gonzalez was offered the full-time position, Dixie Tech quit scheduling Mr. Crocker.[41]

24. Willis told Mr. Crocker on his last day that there were no more hours for him.[42]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[43] A factual dispute is genuine when

---

[36] Motion, Facts, ¶ 23 at 5–6, citing Willis Decl., ¶ 7 at 2; Opposition, Response to Facts, ¶ 23 at 16.
[37] Motion, Facts, ¶ 24 at 6, citing Crocker Dep. at 41:3–41:15; Opposition, Response to Facts, ¶ 24 at 17.
[38] Motion, Facts, ¶ 25 at 6, citing Crocker Dep. at 43:2–43:5; Opposition, Response to Facts, ¶ 25 at 17.
[39] Motion, Facts, ¶ 26 at 6, citing Willis Decl., ¶ 8 at 2; Opposition, Response to Facts, ¶ 26 at 17.
[40] Motion, Facts, ¶ 26 at 6, citing Willis Decl., ¶ 7 at 2; Opposition, Response to Facts, ¶ 26 at 17.
[41] Motion, Facts, ¶ 27 at 6, citing Willis Decl., ¶ 9 at 2; Opposition, Response to Facts, ¶ 27 at 18.
[42] Motion, Facts, ¶ 28 at 6, citing Crocker Dep. at 35:3–35:12; Opposition, Response to Facts, ¶ 28 at 18.
[43] Fed. R. Civ. P. 56(a).

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[44] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[45]

The moving party "bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[46]

## DISCUSSION

### Dixie Tech Did Not Discriminate against Mr. Crocker

When a plaintiff seeks to establish discrimination based on age or disability through circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies.[47] "Under *McDonnell Douglas*'s three-part analysis, a plaintiff must first establish a prime facie case of ADA discrimination by proving (1) [the plaintiff] is disabled (or perceived as disabled) as defined by the ADA, (2) [the plaintiff] is qualified to perform the essential functions of [the plaintiff's] job with or without reasonable accommodation, and (3) [the plaintiff] suffered discrimination as a result of [the plaintiff's] disability."[48] "To demonstrate discrimination, a plaintiff generally must show that [the plaintiff] has suffered an adverse employment action because of the disability."[49] Termination is an adverse employment action for purposes of a

---

[44] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[45] *Id.*

[46] *Id.* at 670–71.

[47] The *McDonnell Douglas* burden-shifting framework applies to claims under the ADA, *see Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017), and to claims under the ADEA, *see* Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1279 (10th Cir. 2010).

[48] *Williams*, 849 F.3d at 896 (citations and internal quotation marks omitted).

[49] *Id.* (citations and internal quotation marks omitted).

discrimination claim.[50] "If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."[51] If "the defendant articulate[s] a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual."[52] "At all times, the plaintiff bears the ultimate burden of proving discrimination."[53]

Dixie Tech does not dispute that Mr. Crocker is disabled or that Mr. Crocker was qualified to perform the job.[54] Dixie Tech only disputes the third element, namely that Dixie Tech discriminated against Mr. Crocker because of his age or disability.[55]

"[T]he inference of discrimination element of the *prima facie* case requires the plaintiff to present some affirmative evidence that disability [or age] *was a determining factor* in the employer's decision."[56] Mr. Crocker claims that three incidents give rise to an inference of discrimination: (1) when it paid him a different wage than similarly situated employees; (2) when it cut his hours from twelve per week to ten per week, and (3) when it terminated his employment.[57]

### A. Dixie Tech did not pay Mr. Crocker a different wage than similarly situated employees.

---

[50] *Wells v. Colorado Dep't of Transp.,* 325 F.3d 1205, 1216 (10th Cir. 2003); *see also Pastran v. K-Mart Corp.,* 210 F.3d 1201, 1205 (10th Cir. 2000).

[51] *Id.* (citations and internal quotation marks omitted).

[52] *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

[53] *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 748 (10th Cir.1999) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 515–16 (1993)).

[54] Opposition at 11.

[55] *Id.*

[56] *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1192–93 (10th Cir. 2018) (emphasis in original) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)) (internal quotation marks omitted).

[57] Complaint, ¶¶ 24–25 at 5–6. Mr. Crocker included Willis's monitoring of Mr. Crocker's work as an additional inference of discrimination, *see id.* ¶ 24 at 5. Because Mr. Crocker acknowledges that Willis monitored the work of other employees (Opposition, ¶ 19 at 14–15) and has not raised any evidence other than his opinion that he was watched "more frequently and more closely than other lab instructors," Mr. Crocker fails to meet his burden. *Id.*

To prove a claim of compensation discrimination, Plaintiff "must show a discriminatory pay disparity between himself [] and similarly situated [] employees."[58] "In other words, discrimination in compensation requires not just any effect on pay, but one of a particular kind: unequal pay for equal work."[59]

Dixie Tech has full-time instructors and part-time instructors whose primary responsibility is to teach classes to students.[60] Dixie Tech commonly pays its part-time instructors $27.50/hour although different rates may apply depending upon the program and the instructor's credentials.[61] Dixie Tech also has part-time employees who work as lab assistants. Lab assistants help students with hands-on activities in the lab after they have learned the theory from the instructor in the classroom.[62] Lab assistants are generally paid $15.00/hour.[63] Classroom instructors sometimes help out in the lab, but lab assistants only occasionally teach in the classroom.[64]

Dixie Tech hired Mr. Crocker on June 1, 2015 as a part-time lab assistant to work in the OpX lab to set up and work with Dixie Tech's OpX instructor, Steve Carwell.[65] Carwell taught in the classroom and when he was done, Mr. Crocker would help students in the lab.[66] Mr. Crocker never taught in the classroom, but he set up lab equipment and helped students with their laboratory projects.[67] Therefore, the only similarly situated employees at Dixie Tech would

---

[58] *Almond v. Unified School Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011).
[59] *Id.* (internal quotation marks omitted).
[60] *Infra* Undisputed Material Facts ¶ 1.
[61] *Id.* ¶ 2.
[62] *Id.* ¶ 3.
[63] *Id.* ¶ 4.
[64] *Id.* ¶ 5.
[65] *Id.* ¶ 10.
[66] *Id.* ¶ 11.
[67] *Id.* ¶ 13.

be part-time lab assistants. There were two such lab assistants, and both earned the same wage as Mr. Crocker.

The first lab assistant was Brigg Lewis who worked as a lab assistant for the CNC program from April 2017 to approximately October 2018.[68] Dixie Tech paid Lewis $15.00/hour when he worked as a lab assistant and $27.50/hour when he taught in the classroom.[69] This occurred after Shrout, the full-time CNC instructor, informed Willis that Lewis was teaching in the classroom.[70] Willis verified that Lewis was indeed teaching in the classroom, and Dixie Tech set up a system where Lewis would be paid at the instructor rate when he was teaching in the classroom ($27.50/hour), and at the lab assistant rate ($15.00/hour) when he was working in the lab.[71] Willis was never told that Mr. Crocker taught in any classes, nor did Willis ever see him teaching in a classroom environment, therefore, no such system was set up for him.[72] The second lab assistant at the time worked in the diesel program and was also paid $15.00/hour.[73] He worked for Dixie Tech from August 2017 to December 2017.[74]

Mr. Crocker's only claim regarding the difference in pay is that he believes he should have been paid $27.50/hour for "teaching" in the lab. However, the undisputed facts show that Dixie Tech only paid its lab assistants $15.00/hour and it is undisputed that Mr. Crocker was not a classroom instructor.[75] As such, Mr. Crocker has failed to produce any evidence that demonstrates that Dixie Tech paid him a different wage because of his age or disability.

---

[68] *Id.* ¶ 8.
[69] *Id.*
[70] *Id.* ¶ 17.
[71] *Id.*
[72] *Id.* ¶ 18.
[73] Draper Decl. ¶ 13 at 3.
[74] *Id.*
[75] *Infra* Undisputed Material Facts, ¶ 13.

### B. Dixie Tech did not discriminate against Mr. Crocker by reducing his hours.

Mr. Crocker claims that the fact that Willis cut his hours from twelve per week to ten per week gives rise to an inference that Dixie Tech discriminated against him. Mr. Crocker said he was told that the reason Willis cut his hours was "so I could have more time to heal" from the surgery he had just had.[76] Mr. Crocker admitted that even though his hours remained at ten per week, he worked more hours when there was a project.[77] He offers no further evidence to establish his *prima facie* case that his age or disability had anything to do with Dixie Tech's reason for adjusting his hours. Because Mr. Crocker has failed to provide any evidence other than his opinion that the official reduction in his hours was discriminatory, he has failed to meet his burden.

### C. Dixie Tech did not discriminate against Mr. Crocker when it terminated him.

Dixie Tech terminated Mr. Crocker's employment because his position was no longer necessary. In August 2017, Jordan Rushton ("Rushton") and Willis discussed hiring a full-time production machinist to help with the CNC program.[78] Willis and Rushton discussed finding someone who had the CNC, manufacturing and automation experience required to help with the manufacturing and maintenance programs.[79] They felt that if they could hire a person with those skills, they could eliminate the manufacturing and maintenance lab assistant position, which Mr. Crocker held.[80] Furthermore, hiring a second CNC instructor was a financial stretch for Dixie

---

[76] Crocker Dep. 39:22–39:23.

[77] *Id.* 40:8–40:18.

[78] *Infra* Undisputed Material Facts, ¶ 19. Mr. Crocker asserts that Rushton and Willis did not consult with Shrout about hiring a full-time employee to help Shrout, but does not explain why this is relevant or material to Mr. Crocker's arguments. Opposition at 27.

[79] *Infra* Undisputed Material Facts, ¶ 19.

[80] *Id.*

Tech and eliminating Mr. Crocker's position would make it possible.[81] Dixie Tech hired Gonzales for the full-time position, which ended Dixie Tech's need to continue employing Mr. Crocker.[82] Therefore, Willis informed Mr. Crocker in November 2017 that there were no more hours for him to work.[83]

Mr. Crocker claims that Dixie Tech discriminated against him because it did not eliminate Lewis's lab assistant position and Lewis is younger than Mr. Crocker and not disabled.[84] However, Lewis was not just a lab assistant but also a classroom instructor and Dixie Tech chose to continue to employ Lewis because he held these two positions and was more experienced than Mr. Crocker.[85] Absent something more, Mr. Crocker has failed to establish his *prima facie* case that Dixie Tech terminated him because of his age or his disability.

### D. Dixie Tech's legitimate, non-discriminatory business reasons for terminating Mr. Crocker were not pretextual.

Mr. Crocker argues that the reduction in weekly hours, Willis following him around, and Dixie Tech not seeking input from Shrout when it decided to hire a full-time classroom instructor are all evidence of pretext.[86] However, none of this evidence demonstrates pretext. A plaintiff can show pretext in one of three ways: (1) with evidence that the defendant's stated reason was false; (2) with evidence that the defendant acted contrary to policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted

---

[81] *Id.*

[82] *Id.* ¶ 22.

[83] *Id.* ¶ 24.

[84] Opposition at 25.

[85] Draper Decl., ¶ 12 at 2–3.

[86] Opposition at 27–28. Mr. Crocker provides no explanation for why the lack of input from Shrout is relevant to his claims, so we consider this statement immaterial.

contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting Plaintiff.[87]

None of the evidence shows that Dixie Tech's legitimate, non-discriminatory business reasons for its actions were false or that its actions were contrary to policy or practice. Dixie Tech paid Mr. Crocker $15.00/hour because that is what it paid all lab assistants. Dixie Tech decreased Mr. Crocker's hours from twelve per week to ten per week so he could recover from his surgery. Mr. Crocker admits that Willis monitored other employees[88] and provides no evidence that Willis's monitoring was pretextual aside from Mr. Crocker's stated opinion.[89] And, Dixie Tech terminated Mr. Crocker's employment because his position was no longer necessary and could no longer afford to pay him after it hired Mr. Gonzalez. Mr. Crocker's argument is mere conjecture and an insufficient basis for denial of summary judgment.[90]

### Dixie Tech did not Retaliate against Mr. Crocker

In order to establish a claim for retaliation, a plaintiff must establish the following: (1) [the plaintiff] engaged in protected activity; (2) [the plaintiff] suffered a materially adverse action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between plaintiff's activity and the materially adverse action.[91] Dixie Tech does not dispute either of the first two elements but maintains that there is no causal connection between Mr. Crocker's protected activity and Dixie Tech's decision to terminate his employment.

---

[87] *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[88] Crocker Dep. at 45:10–45:18.

[89] Crocker Dep. at 44:8–45:1.

[90] *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").

[91] *Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).

Furthermore, even if Mr. Crocker could establish a causal connection, as previously discussed, Dixie Tech terminated his employment for a legitimate, non-discriminatory business reason.

### A. Mr. Crocker fails to establish a causal connection between his termination and the filing of his discrimination claim with UALD.

The third element of a retaliation claim is that there must be a causal connection between the employee's protected activity and the adverse employment action. "To establish a causal connection, [a plaintiff] must present evidence of circumstances that justify an inference of retaliatory motive."[92] This is similar to requiring a plaintiff to prove a but-for causation, which "must be based on more than mere speculation, conjecture, or surmise."[93]

As explained above, discussions to hire a full-time employee and subsequently eliminate Mr. Crocker's part-time position occurred before Mr. Crocker had filed his Charge of Discrimination with UALD, which Mr. Crocker filed after Shrout told him in mid-September that his job was slated for termination.[94] Once Dixie Tech hired Gonzales as the new CNC instructor (November 2017), it stopped scheduling Mr. Crocker because the lab assistant position was no longer necessary. The undisputed facts demonstrate that Dixie Tech planned to eliminate Mr. Crocker's position before he filed his Charge of Discrimination. As such, Mr. Crocker cannot establish a causal connection between his protected activity and Dixie Tech's materially adverse employment action. Therefore, Plaintiff has not met his burden of establishing a *prima facie* case for retaliation.

---

[92] *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)) (citations and internal quotation marks omitted).
[93] *Id.* (citations and internal quotation marks omitted).
[94] *Infra* Undisputed Material Facts, ¶¶ 19–21.

## CONCLUSION

Mr. Crocker has failed to show that Dixie Tech discriminated against him because of his disability or his age and has failed to show that Dixie Tech's legitimate, non-discriminatory business reasons for terminating him were pretextual.[95] Mr. Crocker has also failed to show that Dixie Tech retaliated against him for filing his Charge of Discrimination by terminating him because the evidence provided shows that his termination was planned before he filed his Charge of Discrimination.[96] Because Mr. Crocker has failed to create any genuine disputes of material fact, Dixie Tech's Motion is granted in part.

## ORDER

IT IS HEREBY ORDERED that Dixie Tech's Motion for Summary Judgment and Supporting Memorandum[97] is GRANTED in part. Mr. Crocker's Complaint[98] and this action are DISMISSED with prejudice.

The Clerk is directed to close the case.

Signed May 17, 2021.

BY THE COURT:

_David Nuffer_
David Nuffer
United States District Judge

---

[95] *Infra* 8–14.
[96] *Infra* 14–15.
[97] Docket no. 17, filed Sept. 24, 2020.
[98] Docket no. 3, filed Dec. 30, 2019.